Scott A. KESSNER, Petitioner,

v.

William DUPRAS, Acting Superintendent of the Cayuga Correctional Facility, Respondent.

No. 92–CV–504E(H).

United States District Court, W.D. New York.

June 7, 1993.

Leslie Mark Greenbaum, Gross, Shuman, Brizdle & Gilfillian, P.C., Buffalo, NY, for petitioner.

Kevin M. Dillon, Erie County Dist. Atty., Eleanor T. Kubiniec, Asst. Dist. Atty., Buffalo, NY, for respondent.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

This petition for habeas corpus relief under 28 U.S.C. § 2254 was referred to the undersigned by Hon. John T. Elfvin pursuant to 28 U.S.C. § 636(c), upon consent of the parties, for all further proceedings in the case and entry of judgment. For the following reasons, the petition is dismissed in its entirety.

### FACTS

On November 30, 1990, Petitioner was arraigned in New York State Supreme Court on a seven-count indictment charging him with reckless endangerment, criminal mischief, attempted murder, criminal possession of a weapon, and attempted criminal mischief (R. 113–15, 117–24).[1] The indictment alleged that on May 24, 1990, Petitioner crashed his vehicle into a vehicle driven by his ex-girlfriend, Marcy Pinzotti, and that on October 12, 1990, Petitioner attached a pipe bomb to the undercarriage of the Pinzotti family vehicle (R. 113–15).

At the arraignment, State Supreme Court Justice Theodore S. Kasler continued Petitioner on $10,000.00 cash bail previously posted, and directed the Assistant District Attorney to prepare an order of protection (R. 123). The order of protection, signed by Justice Kasler on December 4, 1990, provided that, as conditions to his release on bail, Petitioner must (a) stay away from the home, school, business or place of employment of Marcy Pinzotti and her entire family; (b) refrain from harassing, intimidating, threatening or otherwise interfering with Marcy Pinzotti and her entire family; and, (c) be at his home by 9:00 p.m. daily (R. 111–12). The order further provided that willful failure to obey these conditions "may, after court hearing, result in your imprisonment for up to 30 days for criminal contempt of court, or, after prosecution under Penal Law § 215.50, in your imprisonment for up to one year" (R. 111).

---

1. References preceded by the letter "R" refer to pages of the Record on Appeal, submitted as an exhibit to the petition (Item 1).

On January 22, 1991, Petitioner entered a plea of guilty to one count of attempted criminal mischief in the first degree, a class C felony, in full satisfaction of the charges in the indictment and several other charges pending against him in the Town of Grand Island Town Court. Petitioner's counsel noted during the plea colloquy "that the Court has indicated that it would sentence Mr. Kessner to the minimum minimum and minimum maximum sentences required for this charge" (R. 72). In accepting the guilty plea, State Supreme Court Justice Mario J. Rossetti engaged in the following colloquy with Petitioner and his attorney:

THE COURT: The Court finds that based on the examination of the defendant that his plea is made upon knowledge of the charge and understanding by him of his constitutional rights; that he has indicated in open court that his plea is voluntary and free from any influence from the prosecution, his counsel, the Court or any other person or persons; that no promises have been made by the prosecution with regard to the sentence in this matter. The Court will acknowledge the commitments made or strike that. The Court will acknowledge the defense counsel's presentation on the record of the Court's commitment with regard to sentence, which would also be conditioned upon Mr. Kessner staying out of trouble between now and the day of sentence. Do you understand that, Mr. Kessner?

DEFENDANT KESSNER: Yes.

MR. GREENBAUM: Understood, Your Honor.

THE COURT: And if, in fact, you do get into trouble between now and then the Court will withdraw its commitment to you, do you understand that?

DEFENDANT KESSNER: Yes.

THE COURT: And will not permit you to withdraw your plea, do you understand that?

DEFENDANT KESSNER: Yes.

(R. 75–76). Sentencing was scheduled for April 15, 1991 (R. 77).

On February 23, 1991, while Petitioner was awaiting sentence, he was arrested at his Grand Island home on charges of aggravated harassment, criminal contempt and resisting arrest. These charges were based on allegations that he violated the order of protection by making threats to Marcy Pinzotti during a telephone call to the home of Craig Krawczyk (R. 32, 90, 96–97). Upon application by the District Attorney's office, Justice Rossetti revoked bail and committed Petitioner to custody pending sentencing (R. 13, 32–33). Petitioner withdrew his request for a hearing to contest the bail revocation, and remained incarcerated until the sentencing date (*id.*).

At sentencing on April 22, 1991, Justice Rossetti noted that both the Grand Island Justice of the Peace and Justice Kasler, in his order of protection, had directed Petitioner to avoid contact with Marcy Pinzotti, and that this direction had been continued as a condition of bail. Justice Rossetti found the allegations regarding the February 23, 1991 telephone call to be "a violation of the Court's condition of bail" (R. 97). He withdrew his previous commitment to impose the "minimum minimum and minimum maximum" sentence, and sentenced Petitioner to an indeterminate prison term of a minimum of two years and a maximum of six years (R. 99–100).

On May 15, 1991, Petitioner appealed from the April 22, 1991 judgment of conviction and sentence to the Appellate Division, Fourth Department (R. 4). On August 28, 1991, Petitioner moved to set aside his sentence pursuant to N.Y.Crim.Proc.Law § 440.20(1) (R. 47). Petitioner argued in his § 440.20(1) motion that the sentencing court's withdrawal of its previous commitment was improper because the admonition that Petitioner not "get into trouble" between the time of plea and sentence was not explicit enough to have allowed Petitioner to fully understand the condition and the consequences of its violation (R. 48–63).

By decision and order dated October 10, 1991, Justice Rossetti denied Petitioner's § 440.20(1) motion, finding that:

The condition of the court's sentence commitment was sufficiently specific to forewarn defendant that criminal acts violative of his conditions of bail could result in

withdrawal of the commitment. Defendant, and his attorney, asserted that they understood said conditions and neither requested further amplification. It is, therefore, inconceivable that the defendant, who has had previous experience in the criminal justice system, was unaware that telephone threats to the victim herein would violate the condition of the sentence commitment.

(R. 14). On November 18, 1991, Petitioner appealed from this order (R. 5).

In his brief in support of his combined direct appeal of both the sentence and the denial of his § 440.20(1) motion, Petitioner argued that at the time of the plea Justice Rossetti failed specifically to continue Justice Kasler's order of protection or to make it sufficiently clear that a violation of the conditions of bail would result in an enhanced sentence (App.Brief, pp. 14–15). According to Petitioner, the warning given at the time of plea to stay "out of trouble" was not specific enough to warrant the severe sentence enhancement imposed, which effectively doubled the sentence originally committed to by the court (R. 14–20). Petitioner also argued that Justice Rossetti's unilateral treatment of the February 23, 1991 telephone call as a breach of the plea bargain agreement, without affording Petitioner an opportunity for a hearing, violated his due process rights (R. 20–24). Finally, Petitioner argued that the sentence enhancement imposed as a result of the February 23, 1991 telephone call was disproportionate to the conduct charged (R. 25–26).

In a memorandum order dated March 13, 1992, the Appellate Division, Fourth Department, unanimously affirmed both the sentence and the denial of the § 440.20(1) motion. *People v. Kessner*, 181 A.D.2d 1044, 582 N.Y.S.2d 584 (4th Dept.1992). According to the Fourth Department, a hearing was unnecessary since Petitioner did not deny making the February 23, 1991 telephone call, and since contact with his former girlfriend "was specifically prohibited by the protection order then in effect...." *Id.*, 181 A.D.2d at 1045, 582 N.Y.S.2d at 585. Thus, the court found that the sentencing court was not bound by its prior commitment, and was free

to impose a greater sentence. *Id.* On June 3, 1992, the Court of Appeals denied leave to appeal. *People v. Kessner*, 80 N.Y.2d 833, 587 N.Y.S.2d 918, 600 N.E.2d 645 (1992).

On July 30, 1992, Petitioner filed the instant petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. He asserts the following grounds:

1. That his fundamental right to due process was denied when his sentence was enhanced on the basis of an alleged violation of a sentence condition without the opportunity for an evidentiary hearing to determine whether he knowingly violated the condition;

2. That his fundamental right to due process was denied when the court, upon acceptance of his plea, imposed a condition which failed to give him adequate notice of the prohibited conduct or the consequences of such conduct; and,

3. That his fundamental rights to due process and equal protection were denied when the sentencing court imposed an enhanced sentence that was disproportionate to the conduct alleged.

Item 1, ¶ 12.

Respondent answered on October 13, 1992, asserting that the grounds raised in the petition were without merit since Petitioner was represented by counsel at the plea and at sentencing, was fully apprised of the terms of the plea agreement, and understood the consequences of a breach of that agreement. Item 4, ¶ 10. Respondent also contends that no constitutional issue has been presented for habeas corpus review since the sentence imposed was within the bounds of the applicable state statute. *Id.*, ¶ 15.

Respondent's brief is concerned primarily with the argument that the grounds asserted in the habeas corpus petition were not fairly presented to the state courts. Accordingly, this Court will consider the answer to the petition amended so as to plead the defense of exhaustion.

## DISCUSSION

**A. Exhaustion.**

 Before a federal court may address the merits of any constitutional issue on a

writ of habeas corpus, the petitioner must have exhausted all available state remedies as to that issue. 28 U.S.C. § 2254(b), (c); *Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991). Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had. *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 190 n. 3 (2d Cir.1982), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

■ The exhaustion doctrine also requires that a habeas petitioner seeking to upset his or her state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon *all* of the federal claims asserted in the petition. *Id.* at 191; *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In order to have fairly presented federal claims to the state courts, the petitioner must have set forth in state court all of the essential factual allegations and legal doctrines asserted in the federal petition. *Daye, supra,* 696 F.2d at 192–93. This requirement is satisfied, even where specific federal constitutional provisions or caselaw have not been cited, if the nature or presentation of the claim in state court was likely to alert that court to the claim's federal nature. *Id.* at 192. As the Second Circuit stated in *Daye:*

> In summary, the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation.

*Id.* at 194.

■ Upon comparison of the claims asserted in his state court appellate brief with the grounds for habeas corpus relief asserted in this Court, I find that Petitioner has fairly presented all three grounds to the state courts. In his brief on appeal, Petitioner claimed that the failure of the sentencing court to conduct an evidentiary hearing denied him "due process protections" afforded under such federal cases as *Specht v. Patterson,* 386 U.S. 605, 608–10, 87 S.Ct. 1209, 1211–12, 18 L.Ed.2d 326 (1967) (imposition of enhanced sentence under state Sex Offenders Act for conviction under separate state statute was a separate criminal proceeding requiring full judicial hearing). This assertion was sufficient to alert the state courts to the federal constitutional nature of the claim.

■ Likewise, the second ground was fairly presented to the state courts. On appeal, Petitioner argued that Justice Rossetti failed to make himself clear during the plea colloquy when he conditioned the court's sentence commitment on Petitioner's ". . . staying out of trouble between now and the day of sentence," and when he indicated that if Petitioner got "into trouble" the court would withdraw its commitment and would not permit Petitioner to withdraw his guilty plea. According to Petitioner, this condition was not sufficiently explicit or unambiguous as to the type of conduct encompassed by the word "trouble" so that Petitioner could fully understand its force and effect. He cited *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), for the proposition that conditions to the acceptance of a plea by the sentencing court must be explicit and unambiguous (App.Brief, p. 16).

*Santobello* involved a promise by the prosecuting attorney, bargained for during plea negotiations, that no recommendation would be made to the court regarding the sentence. When the sentencing finally took place nearly seven months after the plea agreement was made, the presiding judge had retired and a different prosecutor had replaced the one who negotiated the plea. The new prosecutor recommended the maximum one-year sentence. The Supreme Court found this recommendation to be a breach of the promise made in the plea agreement. According to the Court, the plea bargaining process

> . . . must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is

that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Santobello, supra,* 404 U.S. at 262, 92 S.Ct. at 499.

While the *Santobello* case is not directly on point, it employs a constitutional analysis sufficient to alert the state courts to the nature of Petitioner's federal due process claim. Accordingly, the second ground has been exhausted.

■ The same can be said for the third ground. In his appellate brief, Petitioner claimed that the sentence enhancement was an abuse of discretion since it exceeded the maximum sentence which could have been imposed if Petitioner had been found guilty of the charges stemming from the alleged February 23, 1991 telephone call. Petitioner relied on *United States ex rel. Sero v. Preiser,* 506 F.2d 1115 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), a Second Circuit habeas corpus case employing similar constitutional analysis. Accordingly, Petitioner fairly presented this claim to the state courts as well.

**B. Merits.**

■ Each of the claims for habeas corpus relief asserted in the petition attacks the sentence of two to six years imprisonment imposed by the state court. Even though these claims have been exhausted, the length of a sentence imposed within the range prescribed by state law does not present a question of constitutional dimensions and therefore cannot be subject to habeas corpus review. *Underwood v. Kelly,* 692 F.Supp. 146, 152 (E.D.N.Y.1988), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *Castro v. Sullivan,* 662 F.Supp. 745, 753 (S.D.N.Y.1987) (citing cases); *Rivera v. Quick,* 571 F.Supp. 1247, 1248–49 (S.D.N.Y.1983).

The relevant statute setting forth the sentencing range for attempted criminal mischief in the first degree is N.Y.Penal Law § 70.00, which establishes the maximum term of an indeterminate sentence for a class C felony at fifteen years (§ 70.00(2)(c)), and the minimum term at "not less than one year nor more than one-third of the maximum term imposed" (§ 70.00(3)(b)). The sentence imposed on Petitioner by Justice Rossetti of a minimum of two and a maximum of six years was therefore within the range for a class C felony.

■ Petitioner concedes this in his brief. Item 6, p. 34. However, Petitioner contends that the enhancement of the sentence, based on misdemeanor conduct stemming from the February 23, 1991 incident, was excessive. This is a distinction without significance. Petitioner was not sentenced for misdemeanor conduct. He was sentenced for felony conduct after he violated a condition upon which the court's previous sentence commitment was based. The sentence imposed was therefore within the range allowed by state law for the felony conduct encompassed by the plea agreement. There is thus no constitutional basis for reversing the sentence imposed since it falls within statutory limits and is not "grossly disproportionate to the seriousness of the offense." *United States v. Gaggi,* 811 F.2d 47, 63 (2d Cir.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).

■ Petitioner cites *United States v. Lee,* 818 F.2d 1052 (2d Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987), as authority for the argument that his due process rights were violated when the sentencing court enhanced his sentence on the basis of unproven allegations of misconduct. However, due process does not require the sentencing court to hold a full-blown evidentiary hearing in each case in which the defendant is involved in sentence enhancing activity. *Lee, supra,* 818 F.2d at 1056; *United States v. Pugliese,* 805 F.2d 1117, 1123 (2d Cir.1986), *app. after remand,* 860 F.2d 25 (2d Cir.1988), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 813 (1989). What is required is "that a defendant be given the opportunity to assure the accurate presentation of reliable sentencing information to the district court" so that the defendant is not sentenced on the basis of misinformation or materially untrue statements. *United States v. Romano,* 825 F.2d

725, 728 (2d Cir.1987); *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

Here, Petitioner never contested the alleged violation of the court order of protection. He agreed to a revocation of bail based on these charges. He did not request a presentence conference, nor did he request a hearing prior to sentencing, at which he could have stated his version of the facts. Furthermore, at sentencing, he voiced no objection to the enhancement of his sentence.

On appeal, the Appellate Division found that Petitioner "did not deny making the call and the contact was specifically prohibited by the protection order then in effect...." *People v. Kessner, supra,* 181 A.D.2d at 1045, 582 N.Y.S.2d at 585. This determination of fact must be presumed to be correct under 28 U.S.C. § 2254(d).

Accordingly, Petitioner's due process rights were not violated when the court, without holding an evidentiary hearing, enhanced his sentence based on the uncontested allegations regarding his conduct on February 23, 1991.

■ As to Petitioner's claim that the condition to the sentence commitment failed to provide sufficient notice of the conduct prohibited, the Court notes that Petitioner was warned to stay away from Ms. Pinzotti and her family by the Grand Island Town Court Justice of the Peace, by Justice Kasler at arraignment, in Justice Kasler's December 4, 1990 order of protection, and by Justice Rossetti at the plea proceedings. Under these circumstances, Petitioner received sufficient notice that Justice Rossetti's admonition to stay "out of trouble" encompassed the alleged contact with Ms. Pinzotti on February 23, 1991.

Accordingly, I find no merit to any of the claims asserted in the petition.

### CONCLUSION

Based on the foregoing, the petition is dismissed in its entirety. Since Petitioner has failed to make a substantial showing of the denial of a federal right, a certificate of probable cause under 28 U.S.C. § 2253 is denied. *Lozada v. Deeds,* 498 U.S. 430, 111

S.Ct. 860, 112 L.Ed.2d 956 (1991); *Grune v. Coughlin,* 913 F.2d 41 (2d Cir.1990).

**SO ORDERED.**

